UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:21-cr-00532-SEP |
| GEORGE REED, | ) ) ) |
| Defendant. | ) ) |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant George Reed, represented by defense counsel Marc Johnson, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 3 of the charge, the Government agrees to move for the dismissal as to the defendant of Counts 1, 2, 4, 5, 6, 7, 8 and 9 at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this

District relative to the defendant's PPP loan fraud and money laundering during the time period alleged in the Indictment of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Count 3 to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to, assets identified in the forfeiture allegation of the Indictment.

## 3. ELEMENTS:

As to Count 3, the defendant admits to knowingly violating Title 18, United States Code, Sections 1344 and 2, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, the defendant, aiding and abetting, and aided and abetted by, co-defendant Christopher Carroll, knowingly participated in a scheme to obtain any moneys or funds under the custody and control of a financial institution by means of material false or fraudulent representations or promises;

Two, the defendant did so with intent to defraud; and

Three, the financial institution was insured by the Federal Deposit Insurance Corporation.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

From in or about March 2020 through at least as late as in or about March 2021, Defendant Christopher Carroll ("Defendant Carroll") and Defendant George Reed ("Defendant Reed") sought and obtained funds from the Paycheck Protection Program by means of material misrepresentations, to wit, that they would use those funds to retain workers and maintain payroll, when in truth and fact, the Defendants used portions of the loan proceeds to acquire assets, including vehicles and land, and to fund deposits into the Defendants' personal bank accounts and did not in fact use all of the funds for permissible expenses, including to retain or compensate all of their employees.

Defendants Carroll and Reed acted as and identified themselves to be the owners of a timeshare exit company called Square One Group, LLC ("SOG"). Defendants Carroll and Reed jointly made business decisions regarding the management of SOG assets and funds. SOG maintained multiple bank accounts at Enterprise Bank and Trust ("Enterprise Bank"), including account \*\*\*0058 and account \*\*\*1234. Enterprise Bank was a financial institution within the meaning of Title 18, United States Code, §§ 20 and 1344, the deposits of which were insured by the Federal Deposit Insurance Corporation.

3

In or about early April 2020, Defendant Carroll, in consultation with Defendant Reed ("Defendant Reed"), directed SOG's Director of Finance, MT, to apply for a Paycheck Protection Program ("PPP") loan through Enterprise Bank, the financial institution where SOG had its operating accounts. At Defendant Carroll's and Reed's direction, MT omitted the names of Defendant Carroll and Defendant Reed from the loan application, despite the fact that Defendants Carroll and Reed acted as SOG's owners and identified themselves as SOG's owners. Both Defendants Carroll and Reed had felony convictions, and Defendant Carroll was on parole in connection with a felony conviction. If Defendants Carroll and Reed had been listed as owners or applicants on the application, they would have been obligated to check "yes" in response to questions on the application regarding whether Defendant Carroll was serving a term of parole.

In the First Draw PPP loan application, Defendants Carroll and Reed caused MT to certify on behalf of SOG that PPP loan funds would "be used to retain workers and maintain payroll." "Payroll" was defined as to include, *inter alia,* commissions and payments for the provision of employee health insurance, including premiums. This representation was false. Defendants Carroll and Reed did not intend to use PPP loan funds exclusively to retain workers and commissioned employees' payroll by paying wages or salary in lieu of unearned commissions. After SOG's loan application was approved, the First Draw PPP loan proceeds in the amount of $1,247,800.00 were deposited into SOG's Enterprise Bank account ***0058 on May 1, 2020 ("First Draw PPP loan proceeds"). Contrary to the representation made in the loan application, in April, May and June of 2020, Defendants Carroll and Reed paid no compensation to a significant number of SOG's commissioned employees, despite SOG's

4

receipt of First Draw PPP loan proceeds. Further, on April 27, 2020, Defendant Carroll terminated the health insurance benefits of at least 17 of SOG's employees, despite SOG's receipt of First Draw PPP loan proceeds. If Defendants Carroll and Reed had used the First Draw PPP loan proceeds as required by law, no suspension of employee compensation should have occurred in April, May and June of 2020, nor should employee health insurance benefits have been terminated.

After the deposit of the First Draw PPP loan proceeds, beginning on May 15, 2020 and continuing through June 2020, Defendants Carroll and Reed spent $1.9 million from the SOG operating account ***0058 to acquire trucks, trailers, and land to start three new businesses unrelated to SOG's timeshare exit business. The three new businesses were Whiskey Dix Big Truck Repair, Square One Logistics and Square One Transport. Without the deposit of $1.2 million in First Draw PPP Loan funds, SOG would not have been able to fund all of the three unrelated businesses without using funds held in reserve by credit card companies. Specifically, SOG would have been unable to fund the entirety of their capital purchases for the three new trucking businesses.

On November 24, 2020, Defendant Reed, with the knowledge and concurrence of Defendant Carroll, completed and submitted an application for forgiveness of the full amount of SOG's $1,247,800.00 First Draw PPP loan. In SOG's First Draw PPP loan forgiveness application, Defendant Reed falsely indicated that SOG had "not reduced the number of employees or the average paid hours of their employees between January 1, 2020 and the end of the Covered Period," despite the fact that, as Defendants Carroll and Reed knew, SOG had furloughed many of its sales force, suspended the furloughed employees' compensation for a

period of more than two months, and terminated health insurance benefits of at least 17 employees, despite SOG's receipt of First Draw PPP loan proceeds. If Defendants Carroll and Reed had used the First Draw PPP loan proceeds as required by law, then SOG would not have reduced the number of employees or the average paid hours of their employees between January 1, 2020 and the end of the Covered Period.

On or about January 21, 2021, Defendant Reed, with the knowledge of and in consultation with Defendant Carroll, caused the submission to Enterprise Bank of a Second Draw PPP Loan application on behalf of SOG attesting that prior the disbursement of any funds pursuant to the Second Draw, "the full amount of the First Draw PPP loan (including any increase) of the First Draw Paycheck Protection Program Loan for permitted expenses." This representation was false. Defendant Reed knowingly submitted a false certification in the Second Draw PPP Loan application that SOG would use the Second Draw PPP loan funds "to retain workers and maintain payroll." On March 1, 2021, $1,663,830.00 in PPP loan proceeds was deposited into SOG's Enterprise Bank account ***0058 ("Second Draw PPP Loan proceeds").

On March 5, 2021, four days after the deposit of the Second Draw PPP Loan proceeds, Defendant Carroll cashed a $160,000.00 "owner draw" check drawn on Enterprise account ***0058. On March 12, 2021, Defendant Carroll received a $250,000.00 "owner draw" wire transfer from Enterprise Bank account ***0058 into his personal bank account. On March 12, 2021, Defendant Reed received a $250,000.00 "owner draw" wire transfer from Enterprise Bank account ***0058 into his personal bank account. Without the deposit of the Second Draw PPP Loan proceeds, SOG did not have sufficient funds in Enterprise Bank account ***0058 to

fund $660,000.00 in owner draws over a seven-day period paid out to Defendants Carroll and Reed.

In or about March 2022, after Defendant Reed and Defendant Carroll were charged criminally in this matter, Defendant Reed was interviewed by law enforcement officials. Beginning in May 2022, Defendant Reed and his wife, LAR, received threatening text messages from Defendant Carroll. On or about May 1, 2022, Defendant Reed's driveway was vandalized. On or about May 15, 2022, the street in front of Defendant Reed's home was vandalized. On or about May 31, 2022, Defendant Carroll caused the termination of the health insurance benefits of LAR, Defendant Reed's spouse, without providing prior notice to either Defendant Reed or to LAR. LAR only learned of the termination of her health insurance benefits when she attempted to seek medical attention and was informed by the medical provider that her health insurance coverage had been terminated.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES (2021 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

a. **Chapter 2 Offense Conduct:**

(1) **Base Offense Level:** The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties disagree as to the loss associated with the offense and reserve the right to advocate regarding the applicable loss amount at the time of sentencing. U.S.S.G. § 2B1.1(b)(1).

The partis disagree as to whether two levels should be added pursuant to Section 2B1.2(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040 and reserve the right to advocate regarding the applicable this enhancement at the time of sentencing.

b. **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties agree that, depending on the total offense level, either two or three levels should be deducted pursuant to Section 3E1.1(a) and/or (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction

8

**d. Estimated Total Offense Level:** The parties disagree as to the total estimated offense level.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties disagree as to the loss amount in the present matter, and will litigate that issue at sentencing. The parties agree to abide by the district court's

determination of that issue, and specifically waive their rights to appeal the district court's ruling resulting in the calculation of the Total Offense Level. In the event the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences the defendant within or below the corresponding range, then, as a part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences the defendant within or above the corresponding range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office

prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration

and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

        **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies). The defendant agrees to the forfeiture of all items identified in the Forfeiture Allegation of the Indictment.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right

to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

9/2/22
Date

_____
Gwendolyn E. Carroll
Assistant United States Attorney

9.6.22
Date

_____
George Reed
Defendant

9/6/22
Date

_____
Marc Johnson
Attorney for Defendant

15